UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | EP-14-CR-02282-DCG-2 |
| | § | |
| CARLOS DEVORA | § | |
| | § | |

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

On November 18, 2014, Defendant Carlos Devora ("Defendant") was charged with two offenses: (1) conspiracy to possess marijuana and (2) possession with intent to distribute marijuana. On February 2, 2015, Defendant filed a "Motion to Suppress" ("Motion") (ECF No. 39). The United States ("the government") filed a Response (ECF No. 42) on February 10, 2015. On March 25, 2015, the Court held a hearing on the Motion, and heard the testimony of Drug Enforcement Administration ("DEA") Special Agent Christopher Shary ("Special Agent Shary"). *See* ECF No. 50. Defendant moves "to suppress all statements and evidence derived as a result of a warrantless search generated by the utilization of a GPS tracker." Mot. 1. After due consideration of the Motion, Response, applicable law, and hearing, the Court enters the following order.

## I. FACTUAL FINDINGS

1. On November 13, 2014, DEA agents took possession of a vehicle (the "load vehicle") coming from Mexico following an international controlled delivery at a land port of entry in El Paso, Texas.

2.  The international controlled delivery was part of an operation whereby DEA and other law enforcement agents posed as drug traffickers in the United States trying to import illegal drugs from Mexico.

3.  As part of the international controlled delivery, a drug trafficking organization member drove the load vehicle from Mexico to the port of entry in El Paso and voluntarily surrendered the vehicle to a United States law enforcement agent who took possession of the vehicle.

4.  Following the international controlled delivery, DEA agents drove the load vehicle to an empty lot where the agents inspected the vehicle with a K–9 unit.

5.  The K–9 unit alerted the DEA agents to the trunk of the load vehicle.

6.  After being alerted by the K–9 unit, the DEA agents searched the load vehicle and found several bundles of marijuana concealed within it.

7.  The DEA agents then cut open one of the bundles of marijuana, placed a GPS tracking device within that bundle, and re–sealed that bundle so that it looked like an unopened bundle of marijuana.

8.  The load of marijuana was then split in two.  One portion of the original load, which contained the bundle with the concealed tracking device, remained in the load vehicle. The other portion was placed in the vehicle of a confidential source who was working with the DEA in the investigation.

9.  Pursuant to the drug investigation, DEA agents posing as drug traffickers, with the help of the confidential source, had agreed to deliver the contraband, now split in two, to the parking lot of Providence Hospital in El Paso ("the hospital").

10. On November 14, 2014, the load vehicle and the confidential source's vehicle were driven to the hospital's parking lot where they were parked.

11. Soon thereafter, an unidentified individual arrived at the hospital's parking lot, retrieved a bag of marijuana from the confidential source's vehicle, and exited the parking lot.

12. At the same time or very soon after the unidentified individual arrived, Defendant and arrived at the hospital's parking lot and entered the load vehicle.  Defendant then drove the load vehicle out of the parking lot.

13. Special Agent Shary, who was remotely monitoring the GPS tracking device, noticed that the device was leaving the hospital's parking lot.

14. Upon noticing that the GPS tracking device was moving and that it had left the hospital's parking lot, Special Agent Shary alerted a law enforcement agent stationed at the parking lot.  This agent confirmed that the load vehicle was no longer parked at the hospital's parking lot.

15. The agent stationed at the hospital's parking lot did not see the load vehicle leave the parking lot.

16. DEA agents followed the signal transmitted by the GPS tracking device, which led them to 5131 Temple Court, El Paso, where they found the load vehicle.

17. When a DEA agent regained visual contact with the load vehicle, it was already parked in the driveway of 5131 Temple Court.

18. But for the GPS tracking device secreted in the marijuana bundle, the DEA agents would not have located the load vehicle.

19. DEA agents then observed the load vehicle leave the 5131 Temple Court address, but determined that the GPS tracking device was at that moment inside the residence at 5131 Temple Court based on the device's signal.

20. DEA agents followed the load vehicle and stopped the driver.

21. After stopping the load vehicle and interacting with the driver, several DEA agents returned to 5131 Temple Court. There, the agents observed Defendant and co–defendant Elfido Soto depart the residence in a white jeep.

22. DEA agents attempted to stop the white jeep, but the vehicle accelerated past the agents and left the area.

23. Ultimately, the bundle of marijuana with the GPS tracking device was found inside the residence at 5131 Temple Court.

24. Defendant was subsequently apprehended.

## II. DISCUSSION

Relying on *United States v. Jones*, 132 S. Ct. 945 (2012), Defendant argues that "the warrantless placement and use of the GPS tracking device to monitor the vehicle he was driving violated the Fourth Amendment [to the United States Constitution]." *See* Mot. 3. The Supreme Court held in *Jones* that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitute[d] a 'search'" within the meaning of the Fourth Amendment. *Jones*, 132 S. Ct. at 949. "Warrantless searches are *per se* unreasonable under the Fourth Amendment, subject to a few specific exceptions." *United States v. Mata*, 517 F.3d 279, 284 (5th Cir. 2008) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971)). The Court must therefore decide: (1) whether Defendant has standing to challenge the use of the GPS tracking device; (2) if so, whether the monitoring of Defendant by

DEA agents constituted a "search" in light of *Jones*; and (3) if a "search," whether it was unreasonable and thus violated the Fourth Amendment. These questions are answered, as necessary, individually below.

### A. Whether Defendant Has Standing to Challenge the Use of the GPS Tracking Device

In order to claim the protection of the Fourth Amendment, a defendant must show that his own Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). To do this, the defendant must have "a legitimate expectation of privacy in the invaded place." *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (quoting *Rakas*, 439 U.S. at 143). This expectation of privacy must be personal and reasonable, and "it must have 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Id.* (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

In the post–*Jones* context, these two separate grounds for standing have been recognized as the "trespassory search" and the "reasonable expectation of privacy" rationales. *See United States v. Mathias*, 721 F.3d 952, 956–57 (8th Cir. 2013), *cert. denied*, 134 S. Ct. 1015 (2014). Here, Defendant conceded at the hearing on the Motion that this was not a trespassory search case. *See* Hr'g Tr. 21:20–22:13 March 25, 2015. Accordingly, the installation of the GPS tracking device is not at issue. Instead, standing must be found, if at all, in Defendant's legitimate expectation of privacy in the invaded space.

*Hernandez* is dispositive as to this question. Applying the traditional reasonable expectation of privacy rationale, the Fifth Circuit found in *Hernandez* that a defendant has standing to challenge the use of a GPS device to follow his movements while driving a vehicle

when that defendant is an authorized driver at the time the vehicle is being monitored. *See Hernandez*, 647 U.S. at 220.[1] That *Hernandez* predates *Jones* does not render the former case irrelevant to the standing analysis, because *Jones* held that the traditional "reasonable–expectation–of–privacy" inquiry remains the test for non–trespassory searches. *See Jones* 132 S. Ct. at 953. Because Defendant has standing to challenge the use of the GPS tracking device under the traditional reasonable expectation of privacy inquiry, the Court considers whether the warrantless use of that device constituted a "search" within the meaning of the Fourth Amendment.

## B.  *Whether the Monitoring of Defendant by Means of a GPS Tracking Device Constituted a Search*

The crux of Defendant's argument in support of his Motion to Suppress is that the use of the GPS tracking device to monitor the vehicle he was driving violated the Fourth Amendment. Defendant concedes that there was no trespass to his possessory interests in the placement of the GPS tracking device. *See* Hr'g Tr. 21:20–22:13. Rather, Defendant's Fourth Amendment claim involves the transmission of electronic signals without trespass—a claim that remains subject to the traditional Fourth Amendment analysis adopted in *Katz v. United States*, 389 U.S. 347 (1967). *See Jones*, 132 S. Ct. at 953.

A long line of cases applying the *Katz* inquiry in this and other Circuits has consistently held that the short–term use of a broadcasting beeper or GPS device to monitor the movements of a suspect on public thoroughfares does not implicate the Fourth Amendment. *See Hernandez*, 647 F.3d at 220–21 (collecting cases). Indeed, the Supreme Court has explicitly held as much: a "person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281

---

[1] The government does not challenge Defendant's authority to drive the load vehicle.

(1983). *Jones* did not abrogate this holding.  Even Justice Alito's concurring opinion, which applied the *Katz* test to the monitoring at issue in *Jones*, concluded that under *Knotts* "relatively short–term monitoring of a person's movements on public streets accords with expectations of privacy that our society has recognized as reasonable." *Jones*, 132 S. Ct. at 964 (Alito, J., concurring).

The monitoring at issue here was not sufficiently extensive to intrude on Defendant's reasonable expectation of privacy.  The testimony of Special Agent Shary revealed that Defendant's movements were monitored while he traveled from Providence Hospital to 331 Temple Court, in El Paso, and the entire episode concluded in a matter of hours.  That is not the kind of extensive electronic surveillance that the *Jones* plurality found impinges on recognized expectations of privacy.  Because there was no trespass to Defendant's possessory interests or an invasion of his reasonable expectation of privacy, the Court denies Defendant's Motion.  *See Hernandez*, 647 F.3d at 221 (finding no Fourth Amendment violation where the defendant's "movements were recorded over a single cross–country trip" and the defendant "was not subject to continuous, around–the–clock electronic surveillance over [an extended period of time]").

### III.  CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant Carlos Devora's "Motion to Suppress" (ECF No. 39) is **DENIED**.

So ORDERED and SIGNED this ___9th___ day of April, 2015.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

-7-